

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOUIS KUCHAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 06 C 0059 |
| | ) |
| THE AT&T PENSION BENEFIT | ) Judge Joan H. Lefkow |
| PLAN-MIDWEST PROGRAM, *et. al.* | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Louis Kuchar ("Kuchar"), filed suit against defendants, the AT&T Pension Benefit Plan-Midwest Program (the "Plan") and AT&T, Inc., as Plan Administrator (the "Plan Administrator"), under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that the Plan wrongfully denied him a lump-sum disbursement of his retirement benefits. This court has jurisidction pursuant to ERISA, 29 U.S.C. §§ 1332(e)(1) and 1132(f), as well as 28 U.S.C. § 1331. Before the court are the parties' cross motions for summary judgment. For the reasons stated below, Kuchar's motion is granted in part and denied in part while the Plan's motion is denied.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). To determine whether any genuine issue of fact exists, the court must pierce the pleadings

1

and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## BACKGROUND

Kuchar was employed by AT&T or its predecessors from October 22, 1973 to June 24, 2004, when he voluntarily terminated his employment.[1] During his employment, Kuchar participated in multiple employee benefit pension plans, including the SBC Pension and Savings Plan, and the subject of this litigation, the AT&T Pension Benefit Plan-Midwest Program f/k/a Ameritech Pension Plan.

The Plan Administrator for purposes of ERISA is AT&T, Inc. Section 3, pargraph 4 of

---

[1]The materials facts concerning this case are straightforward and not in dispute. Unless otherwise noted, the facts set forth herein are taken from Kuchar's statement of material facts.

2

the Plan vests the Plan Administrator with discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits.

According to the terms of the Plan, a Plan participant with $3,500 or more in his vested pension account as of the date of the termination of his employment may elect a lump-sum distribution of plan benefits. To elect the lump-sum option, a Plan participant must make the election in writing by completing a Retirement Elections - Lump Sum Election Form (the "Election Form") and "filing" it with the SBC Pension and Savings Plan Service Center (the "Service Center") no later than 60 days after the date his employment is terminated.

The Plan provisions are summarized in the Summary Plan Description (the "SPD"). The SPD states that a Plan participant eligible for a deferred vested pension must "submit" his request within 60 days after his termination.

Sometime before his termination, Kuchar informed AT&T of his intent to retire and requested pension information. The Service Center, which provides administration services with respect to the Plan, sent Kuchar a package of documents advising him of his pension benefits and various benefit distribution options. The cover letter dated April 9, 2004 stated, "In order to receive your pension benefit in an Immediate Lump Sum, you must *return* your properly completed election forms within 60 days of the later of your Last Date of Employment or the date you receive this guide." (Emphasis added).

After receiving the Service Center's letter and packet of information, Kuchar called the Service Center on June 16, 2004 and then again on June 22, 2004. During the June 22, 2004 phone conversation, Kuchar asked about the deadline for returning the Election Form to the Service Center. Service Center Specialist Trina Newkirk ("Newkirk") advised, "Well no, it's

3

just that being that you are an Ameritech employee, we need the paperwork in hand if you are going to try to choose a lump sum option. That is only good for sixty days." Before concluding the conversation, Newkirk added, "You have sixty days from Friday's date [June 25, 2004] to get that paperwork back to us."

Kuchar next called the Service Center on August 26, 2004 to confirm receipt of an Election Form he claimed was sent to the Service Center on August 3, 2004. The Service Center advised him that it had not received an Election Form as of that date and that his lump-sum distribution election period had expired. Kuchar asked that a different Service Center Specialist contact him by phone the following morning to further discuss his options.

The next morning, on August 27, 2004, Service Center Specialist Kelly MacGregor ("MacGregor") called Kuchar. During the call, Kuchar reiterated that an Election Form had been sent to the Service Center in late July or early August 2004. Later that day, Penny Rasmussen ("Rasmussen") of Northwestern Mutual Investment Services ("NMIS") contacted the Service Center. During the telephone conversation, Rasmussen stated that NMIS had mailed an Election Form completed by Kuchar to the Service Center on August 24, 2004.

On August 30, 2004, Kuchar wrote to the Service Center, asking that his lump sum distribution request be granted. Kuchar explained that after he and his wife signed and dated the Election Form on July 21, 2004 and had it notarized, "[t]he signed documents were put in the envelope that was provided to us from SBC, and mailed out on August 5th." Kuchar stated that a second Election Form was sent to his financial advisor, NMIS, via Federal Express on that same date, and that NMIS had mailed it to the Service Center on August 24, 2004.

On November 11, 2004, the Service Center sent Kuchar a Claim Denial Letter denying

4

his request for a lump-sum distribution of his pension benefits. The Plan explained that since it did not receive his Election Form until August 27, 2004, his election was untimely.

By letter dated December 3, 2004, Kuchar's attorney appealed the denial of his request for a lump-sum distribution to the Benefit Plan Committee (the "Committee"). In the letter, Kuchar's attorney argued, among other things, that the Plan had to presume timely receipt of Kuchar's August 5, 2004 Election Form since the Plan had identified no evidence rebutting his claim that he properly mailed the Election Form as instructed. Kuchar's attorney also requested any and all documents associated with Kuchar's request for lump-sum distribution of his pension benefits, and advised that upon receipt of those materials, Kuchar would submit further issues and comments for the Committee's review.

Kuchar's attorney sent a letter to the Committee on February 4, 2005 supplementing Kuchar's appeal. In the February 4, 2005 letter, Kuchar's attorney again asserted that the Plan had to presume that it received the Election Form Kuchar maintained was mailed per the Plan's instructions on August 5, 2004. Kuchar's attorney also argued that Kuchar's August 24, 2004 Election Form should be regarded as timely because the Plan documents are unclear as to whether the Election Form must be mailed by the deadline or whether it must be received by the Service Center by that date. The Commitee denied Kuchar's appeal on February 21, 2005.

## DISCUSSION

A. Standard of Review

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

5

the plan." *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 636-37 (7th Cir. 2005) (quoting *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). To determine whether a plan confers discretion on the administrator, courts review the language of the plan *de novo* as they would review the language of any contract. *Id.* In this case, the terms of the Plan provide:

> The Committee has full discretionary authority to interpet the terms of the Plan and to determine eligibility for an entitlement to Plan benefits in accordance with Plan terms. The Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of such Committee shall not be subject to further review.

This language gives Plan participants adequate notice that the Plan Adminstrator will make decisions that are largely insulated from judicial review by reason of being discretionary. As a result, the court reviews the Plan Administrator's conclusion only to determine whether it was arbitrary and capricious. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000).

Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," (2) the decision "is based on a reasonable explanation of relevant plan documents," or (3) the administrator "has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Hess v. Hartford*, 274 F.3d 456, 461 (7th Cir. 2001) (quoting *Exbom v. Central States, Southeast and Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir.1990)). For a decision to be deemed reasonable, a plan administrator must be found to have "consider[ed] the factors that are relevant to the important aspects of the decision, and articulate[d] an explanation that makes a 'rational connection' between the issue, the evidence, the text and the decision made." *Schaub v. Consol.*

*Freightways, Inc. Extended Sick Pay Plan*, 895 F. Supp. 1136, 1140 (S.D. Ind. 1995) (citing *Cuddington v. N. Ind. Pub. Serv. Co. (NIPSCO)*, 33 F.3d 813, 817 (7th Cir. 1994)). "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003).

B.   Analysis of the Committee's Decision

Kuchar contends that two Election Forms were mailed to the Plan and that the Committee should have deemed them both to have been timely received. Kuchar's argument turns on the application of two different "mailbox rules." The first mailbox rule Kuchar invokes holds that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time. See *Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993), *see also, e.g., Hagner v. United States*, 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932). Kuchar argues that, in light of this rule, his testament that an Election Form was mailed to the Service Center in early August created a rebuttable presumption that it was received in its usual time, and thus, well before the August 24th deadline. Since the Plan failed to present rebuttal evidence, Kuchar concludes, his alleged early August mailing should have been deemed timely received. The second mailbox rule provides that the acceptance of an offer is effective upon mailing. See *Barry v. Videojet Systems, Int'l, Inc.*, 1995 WL 548592, *7, n. 3 (N.D. Ill. Sept. 12, 1995). Kuchar argues that this mailbox rule required the Committee to regard the August 24th mailing as received by the Plan on the date it was mailed, as opposed to the date it arrived in the Service Center. To avoid confusion, the court refers to the first mailbox rule invoked by Kuchar as the "presumption-of-receipt rule" and to the second as the "received-

upon-mailing rule."

Kuchar argued before the Committee that the presumption-of-receipt rule is applicable to ERISA, and that the Committee should therefore presume that the Election Form that he alleged was mailed to the Service Center in a SBC-provided envelope in early August was timely received. Despite clearly raising this argument in both his December 3, 2004 and February 3, 2005 letters appealing the decision denying his request for a lump-sum distribution, the Committee failed to consider it. The Committee's February 21, 2005 denial letter did not distinguish between the two "mailbox rules" invoked by Kuchar and made no mention of Kuchar's allegation that he mailed an Election Form in early August. Though the Committee referenced a "mailbox rule" in its explanation of its decision, that discussion strongly suggests that the Committee was considering Kuchar's August 24th Election Form and the received-upon-mailing rule. The Committee explained its decision denying Kuchar's request for a lump sum distribution as follows:

> You have asked that the Plan deem that Mr. Kuchar had timely filed his election form pursuant to the 'mailbox rule.' The Plan is required by federal law to apply consistent rules to all similarly situated participants. The Plan has consistently applied a 'date of receipt' rule with regard to lump sum benefit elections. Your requested procedure would turn the consistent 60 day rule into a 63 or 65 day rule which would be further subject to challenges regarding purported delays by the Postal Service. In other words, your proposed procedure would turn a consistently applied rule into a case-by-case determination with a resultant increase in administrative costs to the overall detriment of Plan participants and their beneficiaries. Since Mr. Kuchar's election form was received after the expiration date of August 24, 2004, the Committee determined that the appeal of the denial of your request on behalf of Mr. Kuchar to receive a Lump Sum Distribution under the Ameritech Pension Plan is denied.

This explanation is an effort to justify its application of a "date-of-receipt rule" and has no relevance to the presumption-of-receipt rule, for it pertains to whether an election should be

8

deemed made on the date the election form is received or, instead, on the date it is mailed. The presumption-of-receipt rule, by contrast, is simply a tiebreaker in favor of receipt where the evidence of receipt and non-receipt is inconclusive. It therefore resolves only the question of when a mailing was received, not when it should be deemed timely.

The Plan acknowledges that *Schikore v. Bank America Supplemental Retirement Plan*, 269 F.3d 956, 962 (9th Cir. 2001), ruled on similar facts that the common law presumption-of-receipt rule applies to ERISA. The Plan contends, however, that the court need not consider whether *Schikore* was correctly decided because even if it is assumed that the presumption-of-receipt rule applies to ERISA, it would not apply in this case because Kuchar has presented insufficient evidence of a proper mailing to create a presumption of receipt. For that reason, the Plan argues that the Committee's failure to consider Kuchar's argument was not an abuse of discretion.

Since there is no evidence that the Committee even entertained Kuchar's argument, there is no decision of the Committee on this issue to which the court owes deference. As a consequence, if the court were to evaluate the sufficiency of the evidence of mailing, it would do so *de novo*, considering not only the evidence that was before the Committee but also evidence submitted by the parties in conjunction with their respective motions for summary judgment. Thus, the court would consider the affidavit of Kuchar's brother, Charles Kuchar, who avers that he personally mailed the Election Form on August 7th. Since a sworn statement of timely and proper mailing is credible evidence sufficient to give rise to the presumption of receipt, *Godfrey*, 997 F.2d at 358, Kuchar's argument could not be easily dismissed.

Even if the court considered only the evidence in the administrative record, the

Committee's failure to consider Kuchar's argument would still be unreasonable. The issue in this case is not whether the Election Forms were received - the parties agree that both of Kuchar's Election Forms were received - but rather when they were received. In this situation, the presumption-of-receipt rule would apply in the reverse. The rule that a proper mailing is deemed received in its usual time would create in this instance a presumption that the Election Form date-stamped September 3rd by the Service Center was mailed only days before and thus after the August 24th deadline.[2] That presumption would be countered, however, not only by Kuchar's repeated testaments, albeit unsworn and on occasion vague or inconsistent, that that Election Form was mailed in early August, but also by the absence in the record of the postmarked envelope in which the second Election Form was mailed. Since Kuchar advised the Plan as early as August 26th that he mailed an Election Form in early August, and repeated that assertion in his August 30th letter to the Plan, the Plan's failure to preserve the postmarked envelope would give rise to an inference that the Election Form was timely received by the Service Center, misplaced, and later found and stamped on September 3rd. As such, since there is evidence in the record sufficient to create a legitimate issue as to when the Election Form date-stamped September 3rd was mailed and received, the court cannot conclude that the Committee's failure to resolve that issue was not an abuse of discretion.

In light of the foregoing, the Committee's denial letter does not substantially comply with the requirements of ERISA. The Plan Administrator failed to respond to Kuchar's argument or to provide him with a "statement of reasons that allowed a clear and precise understanding of the

---

[2]Since the parties agree that the Election Form received on August 27th was mailed on August 24th, the "usual time" of delivery is three mailing days.

10

grounds for the administrator's position [on this argument.]" *See Hackett*, 315 F.3d at 775 (citing *Halpin*, 962 F.2d at 690, 694). The Plan's failure to consider Kuchar's argument prevents the court from evaluating the reasonableness of the denial of Kuchar's request for a lump-sum distribution, and the Plan's decision must therefore be deemed arbitrary and capricious.

The customary remedy in an action for an inadequate denial letter is to remand the case to the administrator for a full and fair hearing on the claim. *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998) (citing *Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393 (7th Cir. 1983)); *see also Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472 (7th Cir. 1998). The court sees no reason to depart from that approach in this case, and therefore, will remand Kuchar's claim to the Plan Administrator for reconsideration even though neither party specifically requested this action by the court. Kuchar's request for a substantive remedy - that the court direct the Plan Administrator to approve his request for a lump-sum distribution - is thus denied.

The administrative record has been inadequately developed in this case: Kuchar did not present his brother's affidavit to the Committee, and the Committee did not investigate the Plan's procedures for receiving, date-stamping, sorting and distributing mail. Several relevant factual questions, therefore, remain unanswered. As a consequence, on remand the Committee should permit Kuchar an opportunity to present a new and comprehensive appeal, including documents or testimony supporting his claim that an Election Form was mailed to the Service Center in early August. *See Kroll v. Prudential Ins. Co. of America*, 2005 WL 1865509, *18 (S.D. Ind. Aug. 4, 2005) (directing administrator to allow plan participant an opportunity to present a fresh appeal on remand where administrative record was underdeveloped).

Nothing in this opinion, including the decision to remand the case to the Plan

11

Administrator, should be construed as an endorsement of any position taken by the parties except as expressly stated herein. More specifically, the court expresses no opinion on whether the presumption-of-receipt rule applies to ERISA nor regarding the weight of the evidence submitted in support of mailing and receipt, respectively. Further, as noted above, Kuchar also challenges the Committee's refusal to apply the received-upon-mailing rule to deem timely the Election Form mailed on August 24th. Since the court has directed the Plan Administrator to afford Kuchar an opportunity to present a fresh appeal on remand, the court declines to consider the many arguments raised by the parties in regards to the Committee's decision rejecting the received-upon-mailing rule.[3]

---

[3] The court notes, however, that the Committee's concern that Kuchar's "requested procedure would turn the consistent 60 day rule into a 63 or 65 day rule which would be further subject to challenges regarding purported delays by the Postal Service" is unfounded. The received-upon-mailing rule would render meaningless the date of actual receipt; timeliness and constructive receipt would instead be measured according to a mailing's postmark. As such, the enforcement of a received-upon-mailing rule would not result in different deadlines for similarly situated plan participants. Intead of requiring a mailing to have been received by the Service Center within 60 days, application of a received-upon-mailing rule would simply require a mailing to have been postmarked within that same 60 days. In both cases the deadline remains the same: 60 days.

**ORDER**

For the reasons stated above, Kuchar's motion for summary judgment [#39] is granted in part and denied in part. The Plan's motion for summary judgment [#36] is denied. This case is remanded to the Plan Administrator for further action consistent with this opinion. This matter shall be administratively closed on the court's docket, with leave to reopen within 30 days of a final decision on remand.

Date: March 13, 2007

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

13